O'FLYNN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Orange County.   January 1, 1913.)

RELEASE (§ 57*)—CANCELLATION—THREATS—COERCION—EVIDENCE.

In an action to set aside a release of claim for personal injuries, given by plaintiff in pursuance of an agreement for payment of a certain sum, evidence *held* insufficient to support a finding that it was induced by threats and coercion.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 106–108; Dec. Dig. § 57.*]

Action by one O'Flynn against the New York Central & Hudson River Railroad Company. There was a verdict for plaintiff, and defendant moves for a new trial. Motion granted.

Darwin W. Esmond, of Newburgh, for plaintiff.
Brown & Cassedy, of Newburgh, for defendant.

TOMPKINS, J. For the purposes of the trial of this case, the defendant's negligence and the plaintiff's freedom from contributory negligence were admitted, and the only questions submitted to the jury were, first, whether a certain contract made by the plaintiff and the defendant for the settlement of the plaintiff's claim, and a receipt and release executed by him, were effective and binding upon the plaintiff; and, second, the nature and extent of the plaintiff's injuries.

The complaint set up the settlement contract, executed by both parties, and the release, executed and acknowledged by the plaintiff, and alleged that they were obtained from the plaintiff by means of false and fraudulent representations, threats, and intimidation, and further alleged that as a part consideration for the settlement, and the execution of said papers by the plaintiff, the defendant had agreed to return to the plaintiff certain papers that plaintiff had furnished to the defendant's claim agent, and to turn over to the plaintiff certain letters and writings that the plaintiff claims the defendant's claim agent said he had in his possession, reflecting upon the plaintiff's character. The plaintiff testified that, at the time of the execution of the settlement contract and release, the defendant's representatives promised to send him these papers and letters, and that thereafter the defendant sent to the plaintiff only a part of such papers, and did not deliver the alleged writings which were claimed to be derogatory of the plaintiff's character.

Upon the trial, the court held and charged the jury that the settlement contract and release could not be rescinded or avoided because

---

of the failure of the defendant to fully perform its part of the contract; in other words, that the defendant's failure to do all that the plaintiff claims it agreed to do as a part of the settlement would not afford ground for setting aside the plaintiff's receipt and release, or the settlement agreement. The plaintiff's remedy would be either by an action or proceeding to recover the papers in question, or by an action against the defendant for damages for its breach of contract, and so the case went to the jury upon the sole question whether the defendant had procured the contract and release to be executed by the plaintiff by means of threats, intimidation, and fraudulent representations.

[1] The jury rendered a verdict in favor of the plaintiff for the sum of $3,000, thereby finding in his favor upon that question, and the motion now is to set aside the verdict. The plaintiff's claim and testimony was that the defendant's agent repeatedly urged him to settle his claim against the company, and threatened that, if he brought a suit, he would be sent to state's prison, and that he and his family would be disgraced by certain letters and documents that the company had in its possession, relating to the plaintiff; and the plaintiff's claim was that he was thereby induced to make the settlement and execute the contract, receipt, and release.

This claim of the plaintiff is highly improbable, and the verdict of the jury upon that question is altogether against the weight of evidence. There was no evidence that justified the jury in finding that by any threat, or fraudulent representation, the plaintiff was induced to make the contract or execute said papers. His free agency was not destroyed, nor his own will overcome, by any act or word on the part of the defendant's representatives. The plaintiff testified that the last time any threat or anything of that character was spoken to him by the plaintiff's agent was 10 days before April 25th, when the settlement was made and the contract and release executed. Nothing of that sort was said by either of the defendant's representatives at the time the terms of the settlement were agreed upon and said papers executed. On that day the plaintiff went voluntarily from his home at Highland Falls to the defendant's office in New York City, and met the defendant's claim agents and urged upon them a settlement of his claims, as he had previously done in person, and by letters and telegrams. What occurred at the defendant's office on that occasion is practically agreed to by all who were present. The plaintiff reduced his claim from $2,000 to $1,000, and then to $800, and then to $500; the defendant's representatives all along insisting that the company would not pay more than $250. Thereupon the head claim agent authorized his assistant to pay the plaintiff $300, if he would take that amount. This the plaintiff agreed to do, and thereupon the contract and release were prepared and executed by the plaintiff and the defendant, and a check for $300 given to the plaintiff.

The plaintiff claims that he did not read the contract and release, and did not know their contents. It appears, however, that he wrote with his own hand, above his signature to the contract, the following words:

"I have read and understand the above contract and release."

He then acknowledged the contract and release, took his check, and went home. There is no suggestion in the evidence that on that day any threat was made, or anything said or done, to intimidate the plaintiff, or to force him to make a settlement, or that any false representation whatever was made. The undisputed facts show that from the beginning the plaintiff was very anxious for, and constantly urging, a settlement of his claim, writing letters and making trips to New York City for that purpose. He was conscious, too, that he had done no wrong, and that no charge that could result in his imprisonment or the disgrace of himself and family could be truthfully made against him. It is unimportant whether he read the contract and release or not. He certainly knew, when he executed them, that they were in consummation of the settlement, the terms of which he had just agreed to. There is not the slightest credible evidence in the case justifying the jury in finding that the plaintiff was forced or threatened into making the settlement agreement; but, on the contrary, it appears practically undisputed that he did it, and executed the paper of his own free will, and without any improper or undue influence being exercised upon him by the defendant's representatives. He was entirely free to settle or refuse to settle upon the terms offered by the defendant. He testified that he went to the defendant's office on that day for the purpose of settling his claim, and that he did. He appeared upon the witness stand to be a man of more than ordinary intelligence. He was in good health and sound mentally, and the claim that on the 25th day of April, 1912, he was forced to make the settlement and execute the papers, is unreasonable and untrue.

The defendant's representatives deny that any threat whatever was made at any time, and the preponderance of evidence is in the defendant's favor upon that question; but, assuming that the threats were made, as testified by the plaintiff, there was nothing in them to cause him alarm or apprehension, because, as already observed, he was conscious of no criminal act or wrong that could bring trouble to himself and family, or justify any criminal prosecution. Besides, there is no claim that any threat was made on the day or at the time of the settlement, or at any time for 10 days prior thereto. The verdict was clearly against the weight of evidence, and it would be a great injustice to allow it to stand.

Motion to set aside the verdict and for a new trial is granted.